IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TAMMY S. KENEDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV81 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Tammy S. Kenedy, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 16; see also Docket Entry 13 (Plaintiff's Brief), Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of August 3, 2011. (Tr. 226-39.)[1] Upon denial of those applications initially (Tr. 133-54, 181-85) and on reconsideration (Tr. 155-80, 190-205), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 206-07). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 60-112.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-34.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 7-9, 305-06), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

   1.   [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016.

   2.   [Plaintiff] has not engaged in substantial gainful activity since August 3, 2011, the alleged onset date.

   3.   [Plaintiff] has the following severe impairments: asthma, curvature of the spine; obesity; gastroesophageal reflux disease (GERD); and anemia.

   . . .

---

[1] Plaintiff filed previous applications for DIB and SSI, alleging an onset date of September 9, 2010. (See Tr. 116.) Following a hearing, an ALJ denied those applications in a decision dated August 2, 2011 (see 113-23), and the Appeals Council denied review (see Tr. 128-32). Plaintiff did not pursue those applications further and, thus, through operation of res judicata, August 3, 2011, the day after the prior ALJ's decision, constituted the earliest possible onset date for Plaintiff's instant applications for DIB and SSI. (See Tr. 17-18.)

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . . She can lift, carry, push, and pull 10 pounds occasionally; stand and walk two hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders and scaffolds; frequently balance, stoop, kneel, crouch, and crawl. She can have no concentrated exposure to unprotected heights, moving mechanical parts, humidity and wetness, extreme cold or extreme heat, and dust, odors, fumes, and pulmonary irritants.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from August 3, 2011, through the date of this decision.

(Tr. 15-33 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

3

of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in
(continued...)

## B. Assignment of Error

In Plaintiff's sole assignment of error, she asserts that the ALJ failed to "properly address [Plaintiff's] credibility." (Docket Entry 13 at 3 (bold font omitted).) More specifically, Plaintiff maintains that "[t]he ALJ's reasons for discrediting [Plaintiff] do not comply with the requirements of 20 C.F.R. § 404.1529 or [Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ('SSR 96-7p')] as encapsulated by part two of the *Craig* test." (Id. at 11.) According to Plaintiff, the ALJ "mischaracterized [Plaintiff's] testimony[,]" "improperly focused on alleged discrepancies in dates of treatment[,] . . . and never evaluated her testimony about the intensity, frequency and limiting effects of her symptoms from asthma and GERD." (Id. (referencing Tr. 31).) Moreover, Plaintiff faults the ALJ for discounting Plaintiff's symptom reporting on the grounds "that she did not report her symptoms of lupus to her doctors, and she was not treated for lupus by a rheumatologist." (Id. at 14 (referencing Tr. 31).) In particular, Plaintiff points out that

---

[5] (...continued)
the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

she "never maintained that lupus disabled her[,]" (id. (citing Tr. 77)), as well as that she "lacked health insurance" and "could not afford" to see a specialist for her lupus (id. at 15 (citing Tr. 249, 280, 337, 384, 397, 400, 403, 487, 519, 524, 529, 535)). Plaintiff deems the ALJ's errors in this regard prejudicial, because the VE "testified that if an individual missed more than one day [of] work per month or was off task 5% or more during the workday, th[o]se limitations would be job preclusive" (id. at 16 (citing Tr. 111)), and Plaintiff testified that "she would be off task 3-4 hours per day up to three days per week as a result of her [asthma] attacks" (id. (referencing Tr. 80)). Those contentions warrant no relief.[6]

SSR 96-7p, as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)).

---

[6] Applicable to ALJ decisions on or after March 28, 2016, the SSA superceded SSR 96-7p with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." SSR 16-3p, 2017 WL 5180304, at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. As the ALJ's decision in this case pre-dates the effective date of SSR 16-3p (see Tr. 34), this Recommendation will apply SSR 96-7p to the ALJ's analysis of Plaintiff's subjective complaints.

Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities . . . shown by medically acceptable clinical diagnostic techniques") and laboratory findings ("anatomical, physiological, or psychological phenomena . . . shown by the use of medically acceptable laboratory diagnostic techniques"). 20 C.F.R. §§ 404.1528, 416.928.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Craig, 76 F.3d at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted). "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *6 (emphasis added). In other words, "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms . . . must be considered in the context of all the evidence." (Id.)

10

In this case, the ALJ discussed Plaintiff's testimony regarding her asthma and GERD symptoms in a fair amount of detail, as follows:

> [Plaintiff] testified she has asthma and uses an albuterol nebulizer three times a day. She said it makes her jittery. She stated she uses Symbicort twice a day, since 2009. She said she also uses an asthma pump, takes Nexium, and also takes medication for lupus and GERD. [Plaintiff] testified that she never misses a day of her medications. She stated she has good days and bad days but about four good days. She said on a bad day, she has an asthma attack and uses the nebulizer. [Plaintiff] testified it makes her weak, and she lies down for three to four hours. She stated anything can trigger an asthma attack. She said she was hospitalized for 14 days in July for asthma and other things. [Plaintiff] testified she has been hospitalized seven times in 2015 for asthma. She stated she tries to avoid stress and fragrances. She said it takes time to get her strength back after an attack.
>
> . . .
>
> [Plaintiff] stated she needs to clear her throat a lot and coughs a lot. . . . [Plaintiff] testified her GERD aggravates her asthma. She said with GERD, about an hour after she eats, it comes back up at least two to three times a week.

(Tr. 18-19 (emphasis added) (internal citation omitted).)

The ALJ then found for Plaintiff on part one of the symptom reporting inquiry, but ruled, in connection with part two, that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible for the reasons explained in th[e] decision." (Tr. 19.) In making the part two finding, the ALJ provided a thorough and detailed

11

discussion of the medical evidence (see Tr. 19-30), and then found as follows:

> The [ALJ] finds [Plaintiff's] asthma; curvature of the spine; obesity; gastroesophageal reflux disease (GERD); and anemia do not preclude all work activity. [Plaintiff] has a diagnosis of severe persistent asthma, aggravated by GERD. She uses multiple medications to control her asthma and GERD, and her treating physician has frequently said that her asthma is poorly controlled and [Plaintiff] is receiving maximum treatment. However, <u>[Plaintiff's] asthma is controlled such that she does not frequently need emergency treatment and can manage it with her medications. [Plaintiff] testified she dusts, vacuums, makes her bed, does laundry, grocery shops, and takes care of her personal needs. The [ALJ] finds the limitation to sedentary work with postural and environmental restrictions account[s] for [Plaintiff's] asthma</u>.
>
> . . .
>
> [Plaintiff] testified she was hospitalized for 14 days due to asthma, and had been to the emergency department due to her asthma seven times in 2015. <u>The medical evidence of record does not support these claims</u>. [Plaintiff] was hospitalized for five days in July 2015 due to asthma and anemia. She visited the emergency room twice more in 2015 due to asthma. [Plaintiff] also alleged her hands and feet lock up due to lupus, but <u>the medical evidence of record does not show any treatment by a rheumatologist for [Plaintiff's] lupus, nor that she has made this complaint to any treating physician</u>. For these reasons, [Plaintiff] is found to be only partially credible.

(Tr. 30-31 (emphasis added) (internal citations omitted).)

As an initial matter, Plaintiff's allegation that the ALJ "mischaracterized [Plaintiff's] testimony" falls short. (Docket Entry 13 at 11.) In that regard, Plaintiff faults the ALJ for "erroneously stat[ing] that [Plaintiff] had 'testified that she ha[d] been <u>hospitalized seven times</u> in 2015 for asthma.'" (Id. at

12

12 n.79 (quoting Tr. 19) (emphasis added).) According to Plaintiff, she testified that she visited the emergency room (i.e., she did not undergo inpatient hospitalization) four to five times in 2015 for asthma. (Id. at 13-14 (citing Tr. 82, 100, 101).) However, the hearing transcript reveals that Plaintiff testified that she had visited the hospital "maybe four or five times . . . or seven times for [her] asthma" in 2015. (Tr. 82 (emphasis added).) Moreover, although the ALJ did use the term "hospitalized" in his initial summary of Plaintiff's testimony (Tr. 19), the ALJ later stated, in the more pertinent evaluation of Plaintiff's symptom reporting, that Plaintiff testified that she had visited "the emergency department due to her asthma seven times in 2015" (Tr. 31 (emphasis added)), thus making clear that the ALJ did not ultimately mischaracterize Plaintiff's testimony.

Plaintiff next criticizes the ALJ's statement that "[t]he medical evidence of record d[id] not support [Plaintiff's] claims" that she "was hospitalized for 14 days due to asthma, and had been to the emergency department due to her asthma seven times in 2015" (Tr. 31) as "improperly focus[ing] on alleged discrepancies in dates of treatment" (Docket Entry 13 at 11). In support of that argument, Plaintiff quoted portions of her testimony which she contends show that "[a]ny discrepancies between her testimony and the actual dates and locations of treatment are simply trivial and

13

inconsequential." (Id.; see also id. at 12-13 (quoting Tr. 82, 96-99).)

The Court should not find error with respect to the ALJ's determination that the record failed to support Plaintiff's statements about the extent of her asthma treatment in 2015. As the ALJ recognized, Plaintiff "was hospitalized for <u>five</u> days in July 2015 for asthma and anemia." (Tr. 31; <u>see also</u> Tr. 541-50 (reflecting hospitalization from July 17, 2015, to July 21, 2015).) Although Plaintiff returned to the hospital with complaints of shortness of breath the next day, July 22, 2105, and remained hospitalized through July 31, 2015 (<u>see</u> Tr. 551-65), the records reflect that Plaintiff "was noted to have <u>no evidence of respiratory compromise</u> despite her respiratory complaints . . . [and] pulmonary emboli w[ere] diagnosed" (Tr. 558 (emphasis added)), as well as a non-occlusive thrombus in the right cephalic vein (<u>see</u> Tr. 559). Thus, despite Plaintiff's complaints of shortness of breath on admission, her second hospitalization in July 2015 involved treatment for conditions other than asthma.

Moreover, the ALJ correctly found that, after the hospitalization on July 17, 2015, Plaintiff visited emergency rooms <u>two</u> more times for asthma in 2015. (<u>See</u> Tr. 31; <u>see also</u> Tr. 576-78 (recording emergency room treatment for headache and asthma on August 12, 2015), 592-94 (documenting visit to emergency department with complaints of, <u>inter alia</u>, wheezing September 10, 2015).)

14

Thus, the record demonstrates that Plaintiff visited the hospital/emergency department a total of three times in 2015 for her asthma, and not "four or five . . . or seven times" as Plaintiff testified (Tr. 82 (emphasis added)).

Furthermore, in discounting Plaintiff's subjective complaints, the ALJ relied on more than just his observations about discrepancies in Plaintiff's testimony regarding the extent of her asthma treatment in 2015. (See Tr. 31.) Although Plaintiff contends that "[t]he ALJ never evaluated [Plaintiff's] testimony about the intensity, frequency and limiting effects of her symptoms from asthma and GERD" (Docket Entry 11 at 11), as quoted above, the ALJ did discuss Plaintiff's testimony about her asthma and GERD symptoms (see Tr. 18-19), and then concluded that her statements merited only partial credit (see Tr. 19). Furthermore, Plaintiff's argument improperly focuses on one paragraph of the ALJ's symptom reporting analysis, to the exclusion of the remainder of that analysis. As the language quoted and emphasized above makes clear, the ALJ considered the infrequency of Plaintiff's emergency treatment for asthma, her engagement in a wide range of daily activities, as well as the objective medical evidence, in finding Plaintiff's statements about her asthma and GERD symptoms not entirely credible.

Plaintiff additionally maintains that the ALJ erred by discounting Plaintiff's symptom reporting on the grounds "that she

did not report her symptoms of lupus to her doctors, and she was not treated for lupus by a rheumatologist." (Docket Entry 11 at 14 (referencing Tr. 31).) In particular, Plaintiff points out that she "never maintained that lupus disabled her[,]" (id. (citing Tr. 77)), as well as that she "lacked health insurance" and "could not afford" to see a specialist for her lupus (id. at 15 (citing Tr. 249, 280, 337, 384, 397, 400, 403, 487, 519, 524, 529, 535)). However, the ALJ's finding that Plaintiff "alleged her hands and feet lock up due to lupus, but the medical evidence of record does not show . . . that she has made this complaint to any treating physician" (Tr. 31 (emphasis added)) finds support in the record, and Plaintiff does not contend otherwise (see Docket Entry 11 at 14 ("While [Plaintiff] reported during an office visit on September 17, 2015 that she had lupus and severe pain all over her body, [Plaintiff] never maintained that lupus disabled her.").)

Moreover, although the ALJ did discount Plaintiff's lupus symptoms in part because "the medical evidence of record d[id] not show any treatment by a rheumatologist" (Tr. 31), and the record does support Plaintiff's claim that she could not afford to see a specialist (see Tr. 280, 337, 384, 397, 400, 403, 487, 519, 524, 529, 535), Plaintiff has not shown that the ALJ's error in that regard prejudiced her. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in

16

quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

First, as discussed above, the ALJ relied on other, permissible bases amounting to substantial evidence to discount Plaintiff's subjective complaints. See Johnson v. Commissioner of Soc. Sec., 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (concluding that ALJ improperly discounted the claimant's credibility for inability to afford treatment but holding that, "so long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (quoting Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004))); Stinnett v. Colvin, No. CV-13-3115-FVS, 2014 WL 6879074, at *6 (E.D. Wash. Dec. 4, 2014) (unpublished) (deeming ALJ's failure to develop record regarding the claimant's ability to afford treatment "harmless because . . . the ALJ's remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence"); Baker ex rel. C.S.A. v. Astrue, No.

17

1:11-CV-00592-WTL, 2012 WL 3779213, at *6 (S.D. Ind. Aug. 31, 2012) (unpublished) (finding that "the ALJ did not consider alternative explanations for why [the claimant] did not take medication" which "ran afoul of SSR 96-7p," but that "the error was harmless" because, "[g]iven the analysis the ALJ engaged in with respect to the SSR 96-7p factors, . . . proper consideration of alternative explanations with respect to this single factor would not have changed the outcome"); Wells v. Astrue, No. CIVIL 09-78-GFVT, 2009 WL 3789006, at *4 n.2 (E.D. Ky. Nov. 12, 2009) (unpublished) (ruling that "the ALJ['s] failure to address [the claimant's] alleged inability to afford treatment amounted to harmless error because [the ALJ] based his credibility determination on many factors, not merely on [the claimant's] lack of medical treatment"). Second, as Plaintiff concedes, she "never maintained that lupus disabled her[,]" (id. (citing Tr. 77)) and, thus, any error by the ALJ in discounting Plaintiff's symptom reporting regarding her lupus would not have affected the outcome of her claims.

Accordingly, the ALJ supported his analysis of Plaintiff's subjective complaints with substantial evidence, and her allegations of error fail as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that this action be dismissed with prejudice.

                                                /s/ L. Patrick Auld
                                                    **L. Patrick Auld**
                                     **United States Magistrate Judge**

May 9, 2018